**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Wilbur A. Rickmon, Appellant.

Appellate Case No. 2015-000989

———————

Appeal From Oconee County
R. Lawton McIntosh, Circuit Court Judge

———————

Unpublished Opinion No. 2018-UP-053
Submitted October 2, 2017 – Filed January 31, 2018

———————

**AFFIRMED**

———————

Carol Anne Johnson, of Carol Johnson Law Firm, P.A., dba Special Needs Legal Advocacy, of Seneca, and Chief Appellate Defender Robert Michael Dudek, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General William M. Blitch, Jr., both of Columbia; and Solicitor Christina Theos Adams, of Anderson, for Respondent.

———————

**PER CURIAM:**  Wilbur A. Rickmon appeals his convictions and sentences for first-degree criminal sexual conduct (CSC) and kidnapping, arguing the trial court erred in: (1) failing to grant a directed verdict on the indictment of first degree CSC and (2) failing to grant a directed verdict because the kidnapping indictment failed to sufficiently notify him of the charges.  We affirm.

I.

Rickmon and Victim lived in the same neighborhood, two trailers from each other. On or about September 27, 2013, Rickmon called Victim, who was then age 17, asking her to come to his trailer and help him fill out his unemployment forms.

When Victim entered Rickmon's trailer, Rickmon locked both the top and bottom locks on the door.  Victim attempted to help Rickmon with his unemployment forms, but could not log onto the Internet.  Rickmon asked Victim to follow him into his bedroom, so they could inspect the router.[1]  Victim told police that once she was inside Rickmon's bedroom, "he shut the door and locked it."

On three different occasions that evening, Victim recounted to police and medical personnel what happened after she entered Rickmon's bedroom.  In her first two statements, Victim said, "[Rickmon] . . . took off my pants, underwear and threw me onto the bed.  He climbed on top of me and started having sex with me" and that "[Rickmon] grabbed my arm . . . [t]ook down my pants and underwear, threw me on the bed and started to rape me."  In a third statement, Victim said, "He grabbed my left arm.  He said he would give me $50 to have sex.  I said no.  He took my shoe off, he undid my belt, [and] pulled my pants off."  At trial, Victim testified that Rickmon "ripped off her pants."

After the sexual assault, Victim put back on her pants and left Rickmon's trailer.  She went straight home and told her mother what happened.  Victim's mother immediately called 911.

Rickmon was subsequently charged with first-degree CSC and kidnapping.  The indictment alleged:

> Wilbur A. Rickmon did in Oconee County, on or about . . .
> September 27, 2013, unlawfully seize, confine, inveigle,

---

[1] At trial, Rickmon's girlfriend testified there was no wi-fi equipment, boxes, or routers in the bedroom because the trailer did not have internet access.

decoy or kidnap, [Victim] by any means whatsoever, without the authority of law, to wit: defendant did confine victim to a room in his home, physically restrained her during a sexual assault. This is in violation of § 16-3-[0]910 of the South Carolina Code of Laws (1976) as amended.

At the close of the evidence, the trial court instructed the jury on the elements of kidnapping:

The State must prove beyond a reasonable doubt that the defendant knowingly and unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away another person without authority of law.

The jury convicted Rickmon on both indictments, and he was sentenced to two terms of life without possibility of parole.

II.

Rickmon first argues he was entitled to a directed verdict because the State presented insufficient evidence of aggravated force on the first degree CSC charge. We disagree.

Under section 16-3-652(1) of the South Carolina Code (Supp. 2017):

A person is guilty of [CSC] in the first degree if the actor engages in sexual battery with the victim and if any one or more of the following circumstances are proven:

(a) The actor uses aggravated force to accomplish sexual battery.

(b) The victim submits to sexual battery by the actor under circumstances where the victim is also the victim of forcible confinement, kidnapping, trafficking in persons, robbery, extortion, burglary, housebreaking, or any other similar offense or act.

Victim testified Rickmon "grabbed [her] arm, [her] left arm, and threw [her] onto the bed and ripped off [her] pants." She indicated in multiple statements, which were read to the jury during cross-examination, that Rickmon "threw" her onto the bed, "climbed on top of [her]," and "raped" her. Victim also stated Rickmon "grabbed [her] arm and threw [her] onto the bed, undid [her] belt, took off [her] pants, and [her] shoe came off with it." Viewing this evidence in the light most favorable to the State, we find the statements and testimony of Victim constituted sufficient evidence of the use of aggravated force by Rickmon to commit the sexual assault. *See* Rule 19, SCRCrimP; *State v. Creech*, 314 S.C. 76, 82, 441 S.E.2d 635, 638 (Ct. App. 1993) ("In reviewing the refusal to grant a directed verdict, the evidence is viewed in the light most favorable to the State. . . ."); *see also State v. Lindsay*, 355 S.C. 15, 21, 583 S.E.2d 740, 743 (2003) (affirming the trial court's denial of the appellant's directed verdict motion because the victim's testimony was sufficient evidence of aggravated force). Thus, the case was properly submitted to the jury. *State v. Schrock*, 283 S.C. 129, 132, 322 S.E.2d 450, 452 (1984) (stating if the State presents any evidence which reasonably tends to prove the defendant's guilt, or from which the defendant's guilt can be fairly and logically deduced, the case must go to the jury).

The evidence also established the sexual battery was accomplished by Victim submitting to Rickmon under circumstances where Victim was also the victim of forcible confinement, kidnapping, trafficking in persons, robbery, extortion, burglary, housebreaking, or any other similar offense or act. *See* S.C. Code Ann. § 16-3-652(1)(b). Victim testified she entered Rickmon's home through the back door and, upon entering, Rickmon shut and locked the door. Later, Rickmon lured Victim into his bedroom under the guise of examining the router. Once they entered the bedroom, Rickmon closed the door and appeared to lock Victim in the room with him. Victim further indicated "she thought the bedroom door was locked because it had no knob. All it was was a lock." She also testified that once the sexual assault was over, she had to "unlock all the locks to get out."

This testimony was direct evidence of both subsection 16-3-652(1)(a) and subsection 16-3-652(1)(b), and the trial court did not err in denying Rickmon's directed verdict motion. *See State v. Pinckney*, 339 S.C. 346, 349, 529 S.E.2d 526, 527 (2000) (stating if there is any direct evidence or substantial circumstantial evidence reasonably tending to prove the guilt of the accused, an appellate court must find the case was properly submitted to the jury).

III.

Rickmon next argues he was entitled to a directed verdict because the trial court's jury instruction impermissibly enlarged and amended the charge of the indictment's "to wit" clause. Specifically, Rickmon claims the "to wit" clause narrowed the indictment's scope to the charge Rickmon "confine[d] [V]ictim to a room in his home [and] physically restrained her during a sexual assault." Thus, Rickmon contends the trial court later erroneously instructed the jury it could convict him if the jury found "[t]he State . . . prove[d] beyond a reasonable doubt that [Rickmon] *knowingly and unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away another person* without authority of law." (emphasis added).

> "The primary purposes of an indictment are to put the defendant on notice of what he is called upon to answer, *i.e.*, to apprise him of the elements of the offense and to allow him to decide whether to plead guilty or stand trial, and to enable the [trial] court to know what judgment to pronounce if the defendant is convicted."

*Evans v. State*, 363 S.C. 495, 508, 611 S.E.2d 510, 517 (2005). The sufficiency of an indictment is determined by two criteria: (1) whether "the offense is stated with sufficient certainty and particularity to enable the court to know what judgement to pronounce, and the defendant to know what he is called upon to answer and whether he may plead an acquittal or conviction thereon;" and (2) whether the indictment "apprises the defendant of the elements of the offense that is intended to be charged." *State v. Gentry*, 363 S.C. 93, 102–03, 610 S.E.2d 494, 500 (2005).

Rickmon claims the "to wit" clause did not put him on notice of the kidnapping offense charged in the trial court's instructions. We disagree. Here, the "to wit" clause merely described the "particulars of how a defendant effected the crime," informing Rickmon of how the State intended to prove the elements of kidnapping. *U.S. v. D'Amelio*, 683 F.3d 412, 418 (2nd Cir. 2012). Also, the trial court's instructions mirrored the indictment's language, and the indictment copied the language of South Carolina's kidnapping statute. *See* S.C. Code Ann. § 16-3-910 (2015) (defining kidnapping by providing: "Whoever shall unlawfully seize, confine, inveigle, decoy, kidnap, abduct or carry away any other person by any means whatsoever without authority of law, except when a minor is seized or taken by his parent, is guilty of a felony"). Thus, the trial court's instructions did not enlarge the indictment beyond the kidnapping charge. *Cf. Bailey v. State*, 392 S.C. 422, 436, 709 S.E.2d 671, 678 (2011) (finding the trial court's instructions improperly enlarged the indictment by adding a "neglect" component which exceeded the original scope of the indictment).

Therefore, we find the indictment put Rickmon on notice that he was charged with kidnapping, of the elements of kidnapping, and of the State's theory of how Rickmon committed the kidnapping. *See State v. Tabory*, 262 S.C. 136, 139, 202 S.E.2d 852, 853 (1974) ("[T]he true test of the sufficiency of an indictment is whether it contains the necessary elements of the offense intended to be charged and sufficiently appraises the defendant of what he must be prepared to meet. The offense intended to be charged must be described with sufficient particularity that conviction or acquittal thereupon may be pleaded in bar to any subsequent prosecution."). The jury convicted Rickmon of kidnapping based on evidence he confined Victim in his room. *See Bailey*, 392 S.C. at 433, 709 S.E.2d at 677 ("In South Carolina, '[i]t is a rule of universal observance in administering the criminal law that a defendant must be convicted, if convicted at all, of the particular offense charged in the bill of indictment.'" (quoting *State v. Gunn*, 313 S.C. 124, 136, 437 S.E.2d 75, 82 (1993)).

Accordingly, we find the trial court's jury charge did not constructively amend or impermissibly enlarge the indictment and put Rickmon on notice of the kidnapping charge he was called upon to answer.

**AFFIRMED.**[2]

**LOCKEMY, C.J., and HUFF and HILL, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.